**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

X.S.Z.,[1]

      Plaintiff,

v.   Case No. 19-4066-JWB

ANDREW SAUL,
*Commissioner of Social Security,*

      Defendant.

**MEMORANDUM AND ORDER**

Plaintiff filed this action pro se for review of a final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for disability insurance benefits and supplemental security income. The appeal is fully briefed. (Docs. 12, 17, 25.) Plaintiff has also filed a motion for appointment of counsel. (Doc. 10.) For the reasons stated herein, Plaintiff's motion for appointment of counsel is DENIED and the decision of the Commissioner is AFFIRMED.

**I. Motion for Appointment of Counsel**

Magistrate Judge Birzer recently summarized the standards governing requests for appointment of counsel in cases such as this:

> There is no constitutional right to counsel in a civil action. For parties like Plaintiff who proceed in forma pauperis, 28 U.S.C. § 1915(e)(1) provides discretionary authority to "request an attorney to represent any person unable to afford counsel." In its broad discretion, the Court evaluates multiple factors when deciding whether to request an attorney for an indigent party. In *Castner v. Colorado Springs Cablevision*, [979 F.2d 1417 (10th Cir. 1992)] the Tenth Circuit identified four factors which are relevant to the district court's decision whether to appoint counsel: (1) the plaintiff's ability to afford counsel, (2) the plaintiff's

---

[1] Plaintiff's initials are used to protect privacy interests.

> diligence in searching for counsel, (3) the merits of the plaintiff's case, and (4) the plaintiff's capacity to prepare and present the case without the aid of counsel. Thoughtful and prudent care in appointing representation is necessary so willing counsel may be located, but consideration of the Court's growing docket, the increase in pro se filings, and the limited number of attorneys willing to accept appointment is also paramount.

*Fantroy v. Comm'r of Soc. Sec. Admin.*, No. 18-1272-KHV-GEB, 2018 WL 6305653, at *1 (D. Kan. Dec. 3, 2018) (footnotes omitted).

After considering the nature of Plaintiff's claims, the lack of complexity in the case, and the fact that Plaintiff is a former professor who holds a Ph.D. in economics, the court concludes Plaintiff is capable of articulating her own arguments without counsel's assistance, and that her motion for appointment of counsel should be denied.

## II. Standard of Review

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The Commissioner's decision will be reviewed to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence as a reasonable mind might accept as adequate to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. *Graham v. Sullivan*, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever fairly detracts

from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. *Glenn*, 21 F.3d at 984.

The Commissioner has established a five-step sequential evaluation process to determine disability. 20 C.F.R. § 404.1520; *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010). If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. At step one, the agency will find non-disability unless the claimant can show that he is not working at a "substantial gainful activity." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). At step two, the agency will find non-disability unless the claimant shows that he has a severe impairment. At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. *Id*. at 751. If the claimant's impairment does not meet or equal a listed impairment, the agency determines the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(e). The RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. § 404.1520(a)(4); § 404.1520(f), (g). At step four, the agency must determine whether the claimant can perform previous work. If a claimant shows that he cannot perform the previous work, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. *Barnhart v. Thomas*, 540 U.S. 20, 25 (2003).

The claimant bears the burden of proof through step four of the analysis. *Blea v. Barnhart*, 466 F.3d 903, 907 (10th Cir. 2006). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. *Id*.; *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the

decision is supported by substantial evidence. *Thompson*, 987 F.2d at 1487 (citations omitted). *See A.W. v. Saul*, No. 19-2271-JWB, 2020 WL 3288080, at *2 (D. Kan. June 18, 2020).

Because Plaintiff is proceeding pro se, the court liberally construes her briefs, but at the same time the court will not assume the role of advocate for Plaintiff. *Garrett v. Selby Conner Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

**III. Background and Procedural History**

Plaintiff alleges she became disabled as of August 25, 2017, when she was 63 years old, due to colon cancer and other conditions. Prior to that, Plaintiff had worked for seven years as a professor teaching classes and conducting research at Washburn University in Topeka, Kansas. (Tr. at 382.) She holds a Ph. D. in economics. Before working as a professor, Plaintiff worked in other jobs including as the director of a business, an adjunct professor, a consultant, and a risk analyst. (*Id.*)

Plaintiff was hospitalized for nineteen days in Xiagoan, China, after experiencing abdominal pain, and was discharged on November 3, 2017, after undergoing surgery for colon cancer. (Tr. at 386, 406.) Plaintiff subsequently underwent chemotherapy.

Plaintiff's applications for disability insurance benefits and supplemental security income were initially denied by the Commissioner on February 28, 2018, and upon reconsideration on June 29, 2018. (Tr. at 160.) Plaintiff then requested an evidentiary hearing before an Administrative Law Judge (ALJ). On December 19, 2018, ALJ Michael Mance held a hearing in Topeka, Kansas, at which Plaintiff appeared and testified. (*Id.*) Plaintiff was represented by an attorney. Impartial vocational expert Robert L. Bond also testified (by phone) at the hearing. (*Id.*) The ALJ issued an unfavorable decision on February 4, 2019. (Tr. at 157.)

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the onset date. (Tr. at 162.) At step two, the ALJ found Plaintiff has the following severe impairments: history of colon cancer, neuropathy, and mild osteoarthritis. (*Id.*) The ALJ found Plaintiff had several non-severe impairments including goiter, osteoporosis, suspicion of glaucoma, shingles, history of increased liver function tests, and diarrhea. (Tr. at 163-64.) At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in the regulations. (Tr. at 164.) The ALJ made various findings in support of that conclusion, including a finding that "there is no evidence that the claimant's colon cancer was inoperable, unresectable, or recurrent." (*Id.*)

The ALJ next determined that Plaintiff has the RFC to perform less than a full range of light work as defined in the regulations, in that she can lift and/or carry up to 20 pounds occasionally and up to 10 pounds frequently; she can stand and/or walk for 6 hours and sit for 6 hours in an 8-hour workday; she can occasionally climb stairs and ramps but not ropes, ladders, or scaffolds; she can occasionally balance, stoop, kneel, crouch, and crawl; she can work at temperature-controlled environments; and she should avoid exposure to unprotected heights, excessive vibrations, and hazardous machinery. (Tr. at 164-65.)

In determining the RFC, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical and other evidence in the record. (Tr. at 165.)

At step four, the ALJ determined that Plaintiff is capable of performing her past relevant work as a professor, a business manager, and a business analyst. (Tr. at 169.) Based on that finding,

the ALJ concluded Plaintiff was not under a disability, as defined by the Social Security Act, from August 25, 2017, through the date of the decision. (*Id.*)

**IV. Analysis**

A. Step Two.

Plaintiff argues the ALJ erred at step two by failing to consider all of the evidence, including a pathology report, post-operative report, and a genetic testing report that according to Plaintiff showed she has Lynch syndrome. (Doc. 12 at 4.) Plaintiff contends Lynch syndrome is a severe impairment because it limits her physical ability to perform basic work activities. (*Id.*) Plaintiff further argues there is no indication the ALJ considered her record of post-operative bowel disfunction and postherpetic neuralgia. (*Id.*)

Plaintiff's argument provides no basis for reversal. As the Commissioner points out, the ALJ is not required to discuss every piece of evidence in the record. *See Wall v. Astrue,* 561 F.3d 1048, 1067 (10th Cir. 2009). The ALJ nevertheless considered and cited some of the evidence singled out by Plaintiff. For example, the ALJ discussed and cited the above-mentioned pathology report (Tr. at 166, citing Exhibit B4F), and post-operative report (Tr. 166, citing Exhibit B2F) in his decision. At any rate, at step two any error in failing to find an impairment severe is rendered harmless if the ALJ finds other severe impairments that permit the ALJ to proceed to the next step in the sequential process. *See Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016) ("[T]he failure to find a particular impairment severe at step two is not reversible error when the ALJ finds at least one other impairment is severe.") The ALJ found Plaintiff had other severe impairments and proceeded to analyze her claim under the five-step sequential process, so any error at step two was harmless.

B. Step Three.

Plaintiff argues the ALJ erred at step three in finding that none of her impairments meet or exceed any of the impairments listed in the regulations. Plaintiff contends her condition meets the severity of Listing 13.18A concerning the large intestine and further that "her immune deficiency disorder called [L]ynch syndrome … meets paragraph C of Listing 14.07 Immune Deficiency Disorders." (Doc. 12 at 5.)

Listing 13.18A deals with the large intestine and is met by a showing of "adenocarcinoma that is inoperable, unresectable, or recurrent." 20 C.F.R. § Pt. 404, Subpt. P, App. 1. The ALJ found "no evidence that the claimant's colon cancer was inoperable, unresectable, or recurrent." (Tr. at 164.) Plaintiff contends her adenocarcinoma is inoperable and unresectable because "her tumor is MSI" and because of a pathology report showing "PMS2" [Lynch syndrome]. (Doc. 12 at 6.) The ALJ's finding, however, is supported by substantial evidence, and the evidence cited by Plaintiff fails to show that her cancer was inoperable or unresectable. The regulations state that "inoperable" means "surgery is thought to be of no therapeutic value or the surgery cannot be performed." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Listing 13.00I. The ALJ cited evidence that Plaintiff underwent "a right hemicolectomy for colon carcinoma along with a lymph node dissection" on October 21, 2017, followed by chemotherapy, and that CT scans after the surgery "have consistently been negative for recurrent or metastatic disease." (Tr. at 166.) Surgery was performed in Plaintiff's case and she cites no evidence of a subsequent, inoperable adenocarcinoma. Nor does Plaintiff cite evidence that her cancer is unresectable. "Unresectable" means "surgery or surgeries did not completely remove the cancer." *Id.* It does not include situations in which the cancer is completely resected but the patient receives chemotherapy or radiation after surgery to eliminate any remaining cancer cells or lessen the chance of recurrence. *Id.* The ALJ found that CT scans after the surgery "have consistently been negative for recurrent

7

or metastatic disease." (Tr. at 166.) That finding is supported by substantial evidence. (*See e.g.*, Tr. at 672) (Dr. Sun's notes stating Plaintiff had "recovered well from surgery" and that recent CT scans "show no evidence of metastatic disease.") Plaintiff fails to cite evidence showing otherwise. Even assuming the diagnosis of an MSI [microsatellite instability] tumor or Lynch syndrome means Plaintiff has some elevated or above-normal risk of redeveloping colon cancer in the future, that would not show that her cancer was inoperable, unresectable, or recurrent within the meaning of Listing 13.18A. *See e.g., In re Morris,* No. 18-10010-BAH, 2019 WL 1418699, at *2 (Bankr. D. N.H. Mar. 27, 2019) (Lynch syndrome means individual has a higher risk of developing certain cancers.) *See also* 20 C.F.R. § Pt. 404, Subpt. P, App. 1 (a cancer is considered recurrent within the meaning of the listing only if it "has returned."); Tr. at 576 (noting the standard treatment for Plaintiff's resected stage III colon cancer is chemotherapy to reduce the risk of recurrent disease.) In sum, Plaintiff has shown no error in the ALJ's finding that she does not have an impairment that meets or medically equals Listing 13.18A.

The same is true with respect to Listing 14.07C, which addresses "immune deficiency disorders, excluding HIV infection." That listing is met by:

> Repeated manifestations of an immune deficiency disorder, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:
>
> 1. Limitation of activities of daily living.
>
> 2. Limitation in maintaining social function.
>
> 3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

20 C.F.R. § Pt. 404, Subpt. P, App. 1. Plaintiff argues she met this listing based on "her immune deficiency disorder called [L]ynch syndrome" and "severe fatigue and malaise, and marked limitation in her activities of daily living." (Doc. 12 at 5.) Leaving aside the fact that Plaintiff

8

apparently bases this argument on evidence not presented to the ALJ, it fails here for the fundamental reason that Plaintiff has not shown any basis for concluding that Lynch syndrome qualifies as an immune deficiency disorder. "Immune deficiency disorders are characterized by recurrent or unusual infections that respond poorly to treatment, and are often associated with complications affecting other parts of the body." 20 C.F.R. § Pt. 404, Subpt. P, App. 1. Lynch syndrome, also known as hereditary nonpolyposis colorectal cancer, results from a genetic mutation, not from a deficiency in the body's immune system. *See e.g., Immediate Clinical Applications of the New Genetic Technology*, 13 St. Thomas L. Rev. 945, 952–53 (2001) ("Germline mutations in five mismatched repair related genes … cause hereditary nonpolyposis colorectal cancer….") Plaintiff has thus failed to meet her burden at step three to show that her condition met a listed impairment. *Cf. Cooksey v. Colvin*, 605 F. App'x 735, 737-38 (10th Cir. 2015) ("Nothing in the record suggests that [plaintiff] can satisfy the basic requirements of listing 9.00. * * * Consequently, [plaintiff] failed to meet 'her step three burden to present evidence establishing her impairments meet or equal listed impairments'….") Plaintiff has failed to show any error in the ALJ's findings at step three.

C. RFC.

Plaintiff contends the ALJ failed to consider all relevant evidence in the record in determining her RFC. (Doc. 12 at 7.) A review of the ALJ's opinion, however, shows the ALJ expressly considered and cited most of the exhibits Plaintiff now argues were overlooked. (*See* Tr. at 166.) The opinion indicates the ALJ considered the relevant evidence in the record pertaining to the nature and extent of Plaintiff's limitations in assessing her RFC. Among other things, the ALJ considered Plaintiff's symptoms, the medical evidence, Plaintiff's record of treatment, the degree to which Plaintiff's reported symptoms were consistent with objective medical tests and

evidence of her activities, and the opinions of medical professionals. The ALJ's ultimate conclusions respecting Plaintiff's RFC were supported by substantial evidence.

Plaintiff also argues the ALJ's "credibility determination did not comply with the relevant legal standards."[2] (Doc. 12 at 8.) Plaintiff does not explain how the ALJ's opinion failed to comply, except to argue the ALJ should have considered the fact that Plaintiff no longer had a caregiver's help after she returned to the United States because she could not afford such help. (*Id.*) But it was not the absence of a caregiver that led the ALJ to determine that Plaintiff's reported symptoms were not entirely consistent with other evidence; it was evidence of other factors, including Plaintiff's admitted "ability to perform personal care tasks independently, such as bathing, dressing, personal hygiene, feeding and toileting," her "ability to cook simple meals, shop, and drive," and the ability to wash dishes, do laundry, and clean the house. (Tr. at 167.) An ALJ's assessment of a claimant's limitations and symptoms will be upheld if it is supported by substantial evidence and applied the correct legal standards. *See Bainbridge v. Colvin,* 618 F. App'x 384, 388 (10th Cir. 2015); *see also Lax v. Astrue,* 489 F.3d 1080, 1089 (10th Cir. 2007) (ALJ's credibility findings deserve special deference). The ALJ's assessment satisfied that standard.

Plaintiff next contends the ALJ erred by failing to properly consider medical opinions and articulate how the opinions were considered under the standards of 20 C.F.R. §404.1520c(a). (Doc. 12 at 11.)

The regulations require the Commissioner to consider the following factors in considering medical opinions and prior administrative medical findings:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her

---

[2] The Commissioner no longer uses the term "credibility" in evaluating a claimant's subjective symptoms, as the determination "is not an examination of an individual's character." *Soc. Sec. Ruling 16-3p Titles II & Xvi: Evaluation of Symptoms in Disability Claims*, SSR 16-3P, 2017 WL 5180304, at *2 (S.S.A. Oct. 25, 2017).

medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

(2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

(3) Relationship with the claimant. This factor combines consideration of the issues in paragraphs (c)(3)(i) through (v) of this section.

(i) Length of the treatment relationship. The length of time a medical source has treated you may help demonstrate whether the medical source has a longitudinal understanding of your impairment(s).

(ii) Frequency of examinations. The frequency of your visits with the medical source may help demonstrate whether the medical source has a longitudinal understanding of your impairment(s).

(iii) Purpose of the treatment relationship. The purpose for treatment you received from the medical source may help demonstrate the level of knowledge the medical source has of your impairment(s).

(iv) Extent of the treatment relationship. The kinds and extent of examinations and testing the medical source has performed or ordered from specialists or independent laboratories may help demonstrate the level of knowledge the medical source has of your impairment(s).

(v) Examining relationship. A medical source may have a better understanding of your impairment(s) if he or she examines you than if the medical source only reviews evidence in your folder.

(4) Specialization. The medical opinion or prior administrative medical finding of a medical source who has received advanced education and training to become a specialist may be more persuasive about medical issues related to his or her area of specialty than the medical opinion or prior administrative medical finding of a medical source who is not a specialist in the relevant area of specialty.

(5) Other factors. We will consider other factors that tend to support or contradict a medical opinion or prior administrative medical finding. This includes, but is not limited to, evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements. When we consider a medical source's familiarity with the other evidence in a claim, we will also consider whether new evidence we receive after the medical source made his or her medical opinion or prior administrative medical finding makes the medical opinion or prior administrative medical finding more or less persuasive.

20 C.F.R. §404.1520c(c).

The ALJ's opinion shows he considered the medical opinions in the record under these standards. (Tr. at 167.) The ALJ considered the opinions of Dr. Muhammad Salamat concerning Plaintiff's limitations, including that Plaintiff could never perform exertional or postural functions; could rarely reach; could sit no more than one hour and stand no more than one to two minutes at a time, and would be off-task one hundred percent of the time. (Tr. at 168.) The ALJ accurately noted these severe limitations were inconsistent with Plaintiff's own testimony in addition to being inconsistent with clinical findings showing few functional deficits. (*Id.*) The ALJ also considered the medical source statement provided by Plaintiff's oncologist, Dr. Weijing Sun, who opined Plaintiff could frequently lift ten pounds, sit and/or stand for at least six hours in an eight-hour day, that she had limitations in fingering and feeling, and she would need to shift positions during the day. The ALJ concluded Dr. Sun's opinions concerning exertional and postural limitations were not supported by the record, pointing to evidence in the record that Plaintiff reported that she had few functional deficits from the numbness and tingling in her hands and, moreover, that Plaintiff had reported that after her chemotherapy treatments ended, the numbness and tingling in her hands had resolved. (*Id.*) The ALJ also found those limitations appeared inconsistent with Plaintiff's ability to engage in activities of daily living such as cooking and performing household chores. (*Id.*) Finally, the ALJ considered the opinions of two state agency medical consultants – Drs. Gary Coleman and George Liesmann – and articulated why he found these opinions persuasive and supported his finding by referencing records indicating Plaintiff had a normal range of motion, normal strength, and no neurological deficits. (*Id.*) Plaintiff has not shown that the ALJ's consideration of these opinions was contrary to §404.1520c or that the ALJ's RFC determination was not supported by substantial evidence.

D. <u>Step Four</u>.

Plaintiff next argues the ALJ failed to make findings regarding the physical and mental demands of Plaintiff's past relevant work. (Doc. 12 at 13.) Additionally, Plaintiff argues the ALJ erred in relying on an opinion by a vocational expert ("VE") about Plaintiff's ability to perform her past relevant work. (*Id.* at 14.)

As the Commissioner points out, the ALJ cited Plaintiff's own information about the demands of her past relevant work ("per her testimony and work history report"), evidence about how the prior relevant work is classified under the Dictionary of Occupational Titles (DOT), and the VE's opinions as to how Plaintiff performed the prior work and how such jobs are generally performed. (Tr. at 169.) The ALJ heard testimony from the VE that Plaintiff's past work as a professor (DOT 09.227-010) is classified under the DOT as light work at a skilled level (SVP 8) and that this was also how Plaintiff actually performed the work. (Tr. at 195.) The VE testified that Plaintiff's past work as a business management director was light work at a skilled level (SVP 8) according to the DOT and as the work was performed by Plaintiff. The VE testified that Plaintiff's past work as a business analyst was sedentary work at the skilled level (SVP 7) according to the DOT and would be classified as light work at the skilled level as performed by Plaintiff. (*Id.*)  At the evidentiary hearing, the ALJ asked the VE to assume a person of Plaintiff's age, education, and past work experience, who was limited to the RFC ultimately determined by the ALJ – that is, a person limited to performing work at the light exertion level with the other limitations indicated previously. The VE opined that "within those limitations [the person] would be able to perform past work as performed by the claimant as well as typically performed in the economy." (Tr. at 197.) The VE identified those jobs as a professor, business management director, and business analyst. (*Id.*) The VE testified that the above information was consistent

13

with the DOT. (Tr. at 198.) The ALJ found the testimony of the VE credible and accepted it. (Tr. at 169.) After comparing Plaintiff's RFC with the demands of her prior work, the ALJ found Plaintiff was able to perform the past jobs as actually and generally performed, such that she is not under a disability. (*Id.*)

Plaintiff has shown no impropriety in the ALJ's determination at step four. Plaintiff cites *Winfrey v. Chater,* 92 F.3d 1017 (10th Cir. 1996) and argues the ALJ improperly failed to obtain adequate factual information about those work demands bearing on Plaintiff's limitations and delegated his fact-finding responsibilities to the VE. This argument is unpersuasive. As indicated above, the ALJ cited various sources in the record, including Plaintiff's own statements, concerning the demands of her prior work, and made adequate findings as to what those jobs required. Moreover, the ALJ did not delegate fact-finding to the VE, but rather assessed and accepted the VE's testimony in making his own findings of fact. There was nothing improper in doing so, and his determination was supported by substantial evidence. *Cf. Doyal v. Barnhart,* 331 F.3d 758, 761 (10th Cir. 2003) ("The ALJ did not delegate the analysis to the vocational expert; instead, he quoted the VE's testimony approvingly, in support of his own findings at phases two and three of the analysis. There was nothing improper about this. An 'ALJ may rely on information supplied by the VE at step four.'")

## V. Conclusion

The final decision of the Commissioner denying Plaintiff's application for disability insurance benefits and supplemental security income is AFFIRMED. The clerk is directed to enter judgment accordingly. IT IS SO ORDERED this 6th day of August, 2020.

           _____s/ John W. Broomes_____
           JOHN W. BROOMES
           UNITED STATES DISTRICT JUDGE